In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 21-2067

JAMES E. HINKLE,

*Petitioner-Appellant,*

*v.*

RON NEAL, Warden

*Respondent-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:19-cv-00577 — **Robert L. Miller, Jr.**, *Judge.*

———————

ARGUED JANUARY 13, 2022 — DECIDED OCTOBER 13, 2022

———————

Before HAMILTON, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges.*

BRENNAN, *Circuit Judge.* James Hinkle is serving a 42-year prison sentence after an Indiana jury convicted him of sexually molesting his minor nephew, S.B., who testified at trial. On appeal from the denial of his habeas corpus petition under 28 U.S.C. § 2254, Hinkle argues his constitutional right to present a complete defense was violated when the state trial court excluded evidence of S.B.'s drug use. Because the Court of

Appeals of Indiana did not unreasonably apply federal constitutional law in upholding the exclusion of that evidence, we affirm.

## I

In 2004, S.B. was 13 years old and lived with his mother in Michigan. That summer, S.B. visited his extended family in Elkhart, Indiana. On at least one occasion during this trip, S.B.'s uncle, Hinkle, isolated and molested him. Hinkle molested S.B. again during another trip to Indiana the following summer.

As he grew older, S.B. began using illegal drugs. By the time he was 17, he used opiates and marijuana regularly and had experimented with heroin. In 2008, S.B.'s family learned of his drug use and confronted him. Hinkle was not present at this meeting. S.B. admitted he used narcotics and also revealed that Hinkle had molested him. S.B.'s family reported Hinkle to the police.

The State charged Hinkle with child molesting, sexual misconduct with a minor, and being a repeat sexual offender. At a pretrial conference, Hinkle's counsel opposed a motion in limine to exclude evidence of S.B.'s drug use, arguing the evidence was relevant to show S.B.'s motive to fabricate his allegations against Hinkle. The trial court ruled that it would not allow evidence of S.B.'s drug use unless offered to show that it interfered with his ability to recall relevant events, but it invited Hinkle's counsel to raise the issue again during trial.

At trial, S.B. testified that Hinkle had molested him more than once. On cross-examination, Hinkle's counsel raised the issue of S.B.'s drug use in an offer of proof outside the jury's presence. She argued that S.B. had falsely accused Hinkle to

avoid facing consequences from his family when they confronted him for using narcotics.

During this offer of proof, S.B. testified that when his family confronted him in 2008, he did not consider it to be "quite an intervention." Instead, he characterized the meeting as "more [of] an open family discussion about [his] drug use. It was just an open discussion." During the meeting, S.B. was informed that a family member would be monitoring him more closely. When asked whether he was told he would be sent to a drug rehabilitation program, S.B. stated that "the option was being explored," but that "it wasn't like you're going, like you're going to rehab, bud." S.B. added that he did not know "[w]here" or "if [he] was going" to a drug rehabilitation program.

The trial court ultimately excluded S.B.'s drug use testimony. The court found "no connection between this family meeting and the establishment of a motive to falsely accuse [Hinkle] of molestation." After the court's ruling, the jury returned and heard impeachment evidence against S.B. This included that he "ha[d] a habit of playing family members against each other," and that he had been "manipulating" his mother and was "really good at lying" to her and his grandmother. S.B. also testified that he had convictions for credit card fraud, auto theft, and retail fraud.

In the State's rebuttal argument during closing, the prosecutor alluded to the challenge S.B. faced by testifying, rhetorically asking why he would put himself through that difficult process:

> Do you think S.B. had fun here having every failing pointed out to him? For a man as weak

> as he's being portrayed, what would have been
> the easiest thing for him to do? To say it didn't
> happen …. But instead he's waited all the way
> up to 2013 to get on the stand and to answer the
> questions and be open to the humiliation and
> ridicule, not only of the fact of the felony con-
> viction, but also the fact that he engaged in sex,
> not just with another man but with his uncle. Do
> you think that was fun for him? He easily could
> have avoided all that.

The jury found Hinkle guilty of child molesting and sexual misconduct with a minor. After being advised of his rights, Hinkle then admitted to being a repeat sexual offender. The trial court imposed an aggregate sentence of 42 years.

Following his sentence, Hinkle stayed his direct appeal and pursued post-conviction proceedings in state court under Indiana's *Davis-Hatton* procedure.[1] His petition for post-conviction relief alleged ineffective assistance of trial counsel, which the trial court denied.

Hinkle appealed the denial of post-conviction relief to the Court of Appeals of Indiana. He raised four issues; the only one before us is whether Hinkle was denied "the fundamental right to due process," and specifically the right to present a complete defense, when the state trial court excluded

---

[1] "Under Indiana's *Davis-Hatton* procedure, a prisoner may 'suspend his direct appeal to pursue an immediate petition for postconviction relief for the purpose of developing a factual record to support the claim. The direct appeal and collateral-review appeal are then consolidated.'" *Karr v. Sevier*, 29 F.4th 873, 884 (7th Cir. 2022), *petition for cert. filed*, No. 22-4 (U.S. June 30, 2022) (quoting *Crutchfield v. Dennison*, 910 F.3d 968, 975 (7th Cir. 2018)).

evidence of S.B.'s drug use. As the federal district court acknowledged, and as Hinkle's counsel stated to us during oral argument, Hinkle's claim was presented to the state appellate court as a violation of Hinkle's right to present a complete defense—not as a Confrontation Clause claim.[2] Hinkle argued that he was "denied an opportunity to challenge the credibility of S.B.," and that S.B.'s accusations against Hinkle "were made in order to deflect … disciplinary action by the family; including, placing S.B. in an inpatient, out-of-state drug facility." In support of his argument, Hinkle relied heavily on *Hyser v. State*, an Indiana appellate decision addressing the constitutional right to present a complete defense. 996 N.E.2d 443 (Ind. Ct. App. 2013).

The Court of Appeals of Indiana affirmed, holding that the state trial court did not abuse its discretion by excluding evidence of S.B.'s drug use. *Hinkle v. State*, 97 N.E.3d 654, 658 (Ind. Ct. App. 2018). After a lengthy recitation of *Hyser*, the state appellate court ruled that Hinkle's case was distinguishable. "Hinkle did not present any basis, other than speculation, to support his assumption that S.B. had invented the allegations of molestation against Hinkle," the court reasoned. *Id.* at 664. Further, Hinkle's theory was "factually misplaced" because S.B. testified that he did not know his family

---

[2] Oral Arg. at 8:25–9:52. When asked why this case does not present a Confrontation Clause issue, Hinkle's appellate counsel responded: "Based upon how it was presented to the trial court in the state level and the appellate court it was couched as a failure to – as a prohibition on a complete defense."

When pressed whether there is a distinction between cross-examination to probe motive and presenting a complete defense, Hinkle's appellate counsel said: "Mr. Hinkle contends it is more so of a complete defense under the Sixth Amendment as opposed to merely a Confrontation issue."

"was considering consequences for his behavior, and, instead, he thought '[i]t was just an open … discussion' with his family about his use of drugs." *Id.* (alteration in original).

Hinkle petitioned for transfer to the Indiana Supreme Court. When that was unsuccessful, he filed a petition for a writ of habeas corpus in federal district court. That court denied habeas relief, concluding that the state appellate court had reached the merits of Hinkle's federal constitutional challenge and had not unreasonably applied federal law.

On appeal, Hinkle now argues that the Court of Appeals of Indiana did not address his constitutional challenge, and that in any event, his federal right to present a complete defense was violated by the exclusion of evidence about S.B.'s drug use.

## II

## A

We begin with the standard of review. The district court's decision denying habeas relief is reviewed de novo. *Carter v. Duncan*, 819 F.3d 931, 940 (7th Cir. 2016). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition will be denied unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This deferential standard applies only when a state court adjudicates a claim "on the merits." *Id.*

While a state court must reach the merits of the issue for AEDPA deference to apply, "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*,

562 U.S. 86, 100 (2011). Instead, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 99; *see Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("[A] federal habeas court must presume that the federal claim was adjudicated on the merits"). This presumption is "strong," but it "can in some limited circumstances be rebutted." *Johnson*, 568 U.S. at 301. "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." *Id.* at 303. We presume that a state court adjudicated a claim on the merits unless the evidence very clearly shows that "the state court relied wholly on state law grounds for its decision or expressly declined to consider the claim." *Minnick v. Winkleski*, 15 F.4th 460, 467 (7th Cir. 2021).

The parties agree that Hinkle raised the constitutional right to present a complete defense before the Court of Appeals of Indiana. But Hinkle contends the state appellate court did not decide his federal claim on the merits and advocates that we review the issue de novo. Hinkle does not suggest that the state appellate court expressly declined to consider his constitutional claim; nor could he, as that court took no such position. Instead, Hinkle argues that the state appellate court's decision relied wholly on state evidentiary rules. His sole basis for this argument is the standard of review used by the state appellate court. Hinkle maintains that, under Indiana law, evidentiary issues are left to the trial court's discretion, but appellate courts review alleged constitutional violations de novo. The state appellate court's application of a

deferential standard in this case is "clear evidence," Hinkle claims, that the court ignored his constitutional contention.

Hinkle's argument fails to "very clearly" show that his constitutional challenge was overlooked. *Johnson*, 568 U.S. at 303. To begin, Hinkle couched his claim as a constitutional issue before the state court. In Hinkle's words, his argument "was replete with references to his constitutional right to present a complete defense and citations to federal cases as pertinent authority." And yet, as his counsel admitted during oral argument, it was Hinkle who instructed the state appellate court in his briefing to review his constitutional claim for abuse of discretion.[3] It is therefore entirely plausible that the state appellate court applied a deferential standard of review because Hinkle invited the court to do so—not because it ignored his constitutional claim. And "a party cannot complain of errors which it has committed, invited, induced the court to make, or to which it consented." *Black v. Wrigley*, 997 F.3d 702, 709 (7th Cir. 2021) (quoting *Sanchez v. City of Chicago*, 880 F.3d 349, 360 (7th Cir. 2018)); *see Brewington v. State*, 7 N.E.3d 946, 977 (Ind. 2014) (noting the invited error doctrine applies to constitutional errors). This possibility alone forecloses Hinkle's ability to "very clearly" show his constitutional claim was ignored.

In any event, we doubt that the state appellate court applied the wrong standard of review. A brief discussion of the right to present a complete defense shows why. In *Chambers*

---

[3] Oral Arg. at 3:50–4:33; Corrected Brief of Appellant at 26, *Hinkle v. State,* 97 N.E.3d 654 (Ind. Ct. App. 2018) (No. 20A03–1703–PC–690). We also note that we may take judicial notice of state court dockets. *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137 n.14 (7th Cir. 2008).

*v. Mississippi*, the Supreme Court held that a defendant has a right to "a fair opportunity to defend against the State's accusations." 410 U.S. 284, 294 (1973). This guarantee of "'a meaningful opportunity to present a complete defense,'" the Court has explained, is "rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation omitted) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). But this right does not permit a criminal defendant to admit any and all evidence:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). When making these evidentiary decisions, the Constitution leaves trial judges "'wide latitude' to exclude evidence" in accordance with these deep-rooted evidentiary rules. *Crane*, 476 U.S. at 689 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). In recognition of these principles, our court has determined that one necessary condition for a successful *Chambers* claim is that the disputed evidence must be "reliable and trustworthy." *Kubsch v. Neal*, 838 F.3d 845, 858 (7th Cir. 2016) (en banc). And "[o]ne, though not the only, way that reliability and trustworthiness can be demonstrated is to show that the

evidence closely resembles evidence that would be admissible under the state's rules." *Id.*

Given this law, we cannot definitively say that the state appellate court applied the wrong standard of review under Indiana law. Hinkle correctly observes that although Indiana appellate courts review a trial court's decisions on the admissibility of evidence for abuse of discretion, de novo review generally applies when "a constitutional violation is alleged." *Dycus v. State*, 108 N.E.3d 301, 303–04 (Ind. 2018). But, importantly, Indiana courts review for abuse of discretion evidentiary decisions that a defendant claims violate his constitutional right to present a complete defense. *Ramirez v. State*, 174 N.E.3d 181, 194 (Ind. 2021) (reviewing for abuse of discretion a trial court's decision to exclude evidence when the defendant argued the exclusion deprived him of "a meaningful opportunity to present a complete defense").[4] In fact, the only standard of review referenced in *Hyser*—a case both parties agree addressed the right to present a complete defense—was abuse of discretion. 996 N.E.2d at 448. If evidence is excluded as unfairly prejudicial, confusing, or potentially misleading—a decision reviewed deferentially—that exclusion cannot violate the right to present a complete defense. *See Holmes*, 547 U.S. at 326; *Kubsch*, 838 F.3d at 858. Therefore, the state appellate court's application of a deferential standard of review does not clearly show it ignored Hinkle's constitutional claim.

---

[4] Neither party cites *Ramirez*. There, the defendant presented a federal constitutional "complete defense" claim, citing *Chambers*, our decision in *Kubsch*, and other related authorities. Appellant's Br. at 66–68, *Ramirez v. State*, 174 N.E.3d 181 (Ind. 2021) (No. 20S-LW-430). It was that claim that the Indiana Supreme Court reviewed for abuse of discretion.

We make one final point on the standard of review: Hinkle's state appellate court brief relied heavily on *Hyser* as a basis for his constitutional claim, and the Court of Appeals of Indiana went to great lengths to address and distinguish that decision. Hinkle insists that court's treatment of *Hyser* ignored the case's constitutional analysis. But the quoted portions of *Hyser* dealt with the relevance and reliability of excluded evidence, which are prerequisites for a complete defense claim. The state appellate court then contrasted the facts in *Hyser* with those of Hinkle's case, concluding that Hinkle had not established "any basis, other than speculation, to support his assumption that S.B. had invented the allegations of molestation against Hinkle." That court also decided Hinkle's theory was "factually misplaced" because S.B. testified that he was unaware that "his family was considering consequences for his behavior." In other words, there was no basis to connect the family meeting on S.B.'s drug use with a motive for S.B. to lie about Hinkle's sexual abuse. These considerations go directly to a key element of a complete defense claim: the degree to which the proffered evidence is essential to the defendant's ability to present a defense. *Kubsch*, 838 F.3d at 858.

Because Hinkle has not "very clearly" shown that the state appellate court ignored his constitutional claim, we presume that it was adjudicated on the merits. *Johnson*, 568 U.S. at 303. The state appellate court's decision is thus entitled to AEDPA deference.

**B**

**1**

Under AEDPA, Hinkle seeks to collaterally challenge the state resolution of his federal claim. An application for a writ

of habeas corpus may not be granted unless the adjudication of the petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[5] 28 U.S.C. § 2254(d)(1). This strict standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Minnick*, 15 F.4th at 468 (quoting *Harrington*, 562 U.S. at 102–03). As a result, relief is precluded unless the petitioner can "demonstrate that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Westray v. Brookhart*, 36 F.4th 737, 746 (7th Cir. 2022) (quoting *Adorno v. Melvin*, 876 F.3d 917, 921 (7th Cir. 2017)).

In *Kubsch*, we analyzed the Supreme Court's *Chambers* line of cases to determine when the exclusion of evidence violates the right to present a complete defense. 838 F.3d at 854–58. Our court deduced five factors present in successful *Chambers* challenges. First, "the cases in which the *Chambers* principle has prevailed 'dealt with the *exclusion* of evidence … or the testimony of defense witnesses, … [not] a defendant's ability to present an affirmative defense.'" *Id.* at 858 (alterations in original) (quoting *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993)). Second, "the cases in which the Court has applied *Chambers* … have involved murder and often the death penalty." *Id.* Third, and as already discussed, "the proffered evidence

---

[5] Hinkle does not argue that the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

must be essential to the defendant's ability to present a defense; it cannot be cumulative, impeaching, unfairly prejudicial, or potentially misleading." *Id.* Fourth, "the evidence must be reliable and trustworthy." *Id.* And fifth, "the rule cannot operate in an arbitrary manner in the case at hand." *Id.*

Hinkle insists that, even if we decide that the state court adjudicated his constitutional challenge on the merits, that court did not explain its analysis of the constitutional issue. When that happens, *Harrington* instructs us "to postulate arguments or theories that *could have supported* the state court's decision and then defer to the bottom-line decision unless it was an unreasonable application of federal law." *Whatley v. Zatecky*, 833 F.3d 762, 774 (7th Cir. 2016) (citing *Harrington*, 562 U.S. at 102).

We need not posit arguments in support of the state appellate court's decision. That court expressly found that Hinkle had not presented "any basis, other than speculation," to connect the family discussion on S.B.'s drug use to a motive to bring false accusations against Hinkle. So the proffered evidence was not "essential to the defendant's ability to present a defense" and was, at most, "merely impeaching." *Kubsch*, 838 F.3d at 858, 860. In fact, the state appellate court concluded that Hinkle's theory was contrary to the evidence because S.B.'s testimony revealed he did not know that his family considered sending him to a rehabilitation program for his drug use. Rather, S.B. characterized his talk with family as "just an open … discussion." So Hinkle's defense theory was "potentially misleading." *Id.* Thus, the state appellate court upheld the trial court's conclusion that "Hinkle had not demonstrated a connection between S.B.'s family discussion on his drug use and a motive for S.B. to falsely accuse Hinkle

of molestation." Hinkle fails to respond to this conclusion or offer any argument that the state appellate court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). He suggests only that *Chambers* prevents such state evidentiary considerations from playing a role in analyzing a defendant's constitutional rights.

But *Kubsch* held otherwise because "*Chambers* itself" required evidence to be "reliable and trustworthy." 838 F.3d at 858. That can be shown when "the evidence closely resembles evidence that would be admissible under the state's rules." *Id*. Only when evidentiary rules exclude evidence and "serve no legitimate purpose or … are disproportionate to the ends that they are asserted to promote" is the right to present a complete defense infringed. *Holmes*, 547 U.S. at 326. And Hinkle has not suggested that Indiana's evidentiary rules, requiring a reliable evidentiary foundation to pursue a theory of impeachment, fail on either front. He has thus failed to show that the state appellate court's decision was an unreasonable application of federal law.

If we were to offer additional arguments on the state court's behalf, as Hinkle invites us to, there are several. This case does not involve murder or the death penalty, which places it outside those cases where the Court has applied *Chambers*. *Kubsch*, 838 F.3d at 858. And other impeachment evidence was admitted. Hinkle had already attacked S.B.'s credibility by pointing to S.B.'s previous convictions for credit card fraud, auto theft, and retail fraud, along with testimony that S.B. played family members against one another and was "really good at lying to" his mother and grandmother. "Given the extensive evidence [Hinkle] was allowed to introduce, the

incremental impact of the excluded evidence would have been slight"—or so the state courts could reasonably have concluded. *Sarfraz v. Smith*, 885 F.3d 1029, 1038 (7th Cir. 2018).

Hinkle submits that, even if the evidence was impeaching, it can still constitute a *Chambers* violation. Even if true, that is beside the point. The question is whether the impeachment evidence is also "essential" to the defendant's ability to present a defense. *Kubsch*, 838 F.3d at 858. Only then may its exclusion constitute a constitutional violation. *Id.* at 858. For example, in *Chambers*, the defendant on trial for murder sought to impeach one of his witnesses using that witness's prior sworn confession and three other admissions of guilt, all of which would have shown that the witness had committed the killing. 410 U.S. at 289.

But Hinkle's impeachment evidence is qualitatively different than the evidence in *Chambers*. Hinkle insists the excluded evidence was needed to rebut the prosecutor's suggestion that S.B. lacked a motive to lie. Yet, crucially, S.B.'s characterization of the family meeting and drug rehabilitation discussion does not exculpate Hinkle. Rather, it forms the basis for an unfounded, speculative, and counterfactual theory about S.B.'s motives to falsely accuse his uncle of molestation. The state courts could reasonably conclude that, unlike the evidence in *Chambers*, the evidence here is akin to "cumulative, impeaching, unfairly prejudicial, or potentially misleading" evidence, the exclusion of which does not offend *Chambers*. *Kubsch*, 838 F.3d at 858.

## 2

The dissenting opinion agrees that AEDPA deference applies here, but it concludes that the decision of the Court of

Appeals of Indiana is an unreasonable application of Supreme Court precedent. To do so, the dissent recharacterizes Hinkle's challenge as under the Confrontation Clause, rather than a case presented and argued on the right to present a complete defense. That reframing is not supported by the record, and we view the facts in this case and the applicable law differently than our dissenting colleague.

First, in his habeas petition, Hinkle has always contested a violation of his right to present a complete defense. The dissent contends Hinkle did not waive a characterization of his habeas petition as raising a Confrontation Clause violation. But references to that constitutional provision in underlying pleadings do not overcome how Hinkle presented the case in the district court and how he has argued the case to us.

As the district court noted, "these thoughts [about the Confrontation Clause] are pertinent only in passing because Mr. Hinkle didn't present a Confrontation Clause claim to the state courts. He relied on a distinct constitutional principle … the right to present a complete defense." And the district court granted the Certificate of Appealability only "on the claim that the trial court violated the right to present a complete defense." In this court, Hinkle argued only that his constitutional right to present a complete defense was denied.[6]

Second, Hinkle's theory of impeachment fails to explain how S.B.'s accusations of sexual molestation would allow the victim to avoid drug treatment, thereby supplying S.B. with a motive to lie. The state appellate court held that Hinkle was

---

[6] Hinkle's single federal appellate brief references the Sixth Amendment's Confrontation Clause twice but does so only as one of the sources of the guarantee to present a complete defense. R. 6 at 14, 16.

not allowed to conjecture a motive for the victim to lie that was not supported by the evidence. The family's "open discussion" concerned how they would take care of the victim's drug problem, which remained whether or not Hinkle had sexually molested the victim. And in any case, any speculative motive of S.B. to deflect attention from himself or to redirect the conversation is different in nature from a motive to fabricate sexual abuse allegations.

The state appellate court concluded that the conversation about the victim's drug use was not related to any motive to contrive the allegations against Hinkle: "[T]here is no question of retaliation and Hinkle did not present any basis, other than speculation, to support his assumption that S.B. had invented the allegations of molestation against Hinkle." This is far different than those cases considering the right to present a complete defense when the excluded evidence was unquestionably relevant. *See, e.g., Holmes*, 547 U.S. at 321–22 (improper exclusion of evidence of a third party's guilt); *Chambers*, 410 U.S. 284, 286–87 (1983) (improper exclusion of evidence of a third-party perpetrator who had confessed to the defendant's attorneys).[7]

The dissent points to a "motive to deflect attention from himself." But S.B. testified during the offer of proof, and the

---

[7] Under the Confrontation Clause cases that the dissent presents, trial judges have "wide latitude" to curtail cross-examination on matters that would confuse the issues or are only "marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also Olden v. Kentucky*, 488 U.S. 227, 232 (1988); *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Given the evidence at issue here, the state appellate court's decision was not an unreasonable application of federal confrontation law either.

state courts concluded that the victim denied he was facing consequences beyond a different uncle, Swan Mishler, supervising him more carefully. The evidence showed that the victim "did not know" that he was "facing consequences for his own drug use." So there was no factual basis to connect the open family discussion about the victim's drug use with any motive for S.B. to lie that Hinkle had sexually molested him. Without this connection, the state courts could reasonably conclude that allowing the jury to consider the victim's drug use could create unfair prejudice and confuse the issues—an Indiana Rule of Evidence 403 judgment call on which we defer to the trial court. Our dissenting colleague's evaluation of *Kubsch*'s third factor thus fails to engage with, much less defer to, the analyses of the Indiana courts.

The dissent also overreads this court's decision in *Fieldman v. Brannon*, 969 F.3d 792 (7th Cir. 2020), as "voic[ing] skepticism about whether the *Kubsch* factors should apply in complete-defense cases when the excluded evidence implicates *other* constitutional rights and was excluded for reasons *other than* a state's hearsay rules." In *Fieldman*, this court affirmed the district court's grant of habeas relief under 28 U.S.C. § 2254(d)(1) when Illinois state courts had found irrelevant and excluded testimony from the defendant about his actions and concerned his intent to commit the crime of which he was charged. 969 F.3d at 796–99, 804–06. This court concluded that the state court had limited the defendant from discussing his state of mind on the day of the crime. *Id*. at 805. "[T]he excluded testimony about events leading up to the recorded meeting went straight to the heart of his claim of innocence." *Id*. Without the excluded testimony from the defendant himself, "the jury lacked vital context to weigh Fieldman's credibility about his lack of intent." *Id.*

Such evidence is qualitatively different—as discussed above—from the speculative victim impeachment evidence at issue here. *Fieldman* is not "a limitation on the *Kubsch* framework," as the dissenting opinion concludes. Indeed, this court in *Fieldman* specifically limited its distinguishment of the *Kubsch* five-factor framework to defendant Fieldman's case, which concerned his right to testify in his own defense. *Id*. at 807 n.5.[8] *Kubsch* did not apply because the case "announced its framework when discussing *Chambers v. Mississippi* … and applied principles distilled from *Chambers* and related cases to a state's application of its hearsay rule to exclude critical witness testimony." *Id.* Of course, Hinkle relies on *Chambers* to challenge a state court evidentiary ruling that excluded part of a victim's testimony.

The other reasons our dissenting colleague offers for reversal are unconvincing.

Our colleague concludes that Hinkle had the right to present evidence of the victim's bias and motive far broader than the state trial court allowed him, citing *Davis v. Alaska*, 415 U.S. 308 (1974)). But in *Davis*—a case interpreting the Confrontation Clause, not the right to present a complete defense, 415 U.S. at 309—the evidentiary ruling eliminated impeachment in its entirety and did so where the motive to fabricate was concrete. *Id*. at 318. There, the key prosecution witness was a juvenile probationer adjudicated of burglary who, "under fear of possible probation revocation," had every motive

---

[8] Interestingly, this court still found *Kubsch* "helpful" and applied that decision's "general discussion of circumstances in which a state evidentiary rule should yield to a defendant's right to present a defense." *Fieldman*, 969 F.3d at 807 n.5.

to "shift suspicion away from himself as one who robbed" a bar. *Id*. at 309–11. Here, as the Indiana trial and appellate courts reasonably concluded, Hinkle's theory lacked a factual basis to connect the family discussion on S.B.'s drug use with a motive to fabricate. Perhaps S.B. wanted to deflect attention away from himself by talking about Hinkle's sexual abuse. But again, a motive to redirect a conversation is not a motive to fabricate. Any connection between the two is mere "speculation," as the state appellate court concluded.

The dissent also contends that Hinkle had a right to offer motive evidence even when, if credited, it did not conclusively establish the defendant's innocence. This contention runs contrary to the third *Kubsch* factor: "[T]he proffered evidence must be essential"—not just possibly helpful—"to the defendant's ability to present a defense." 838 F.3d at 858. Possibly impeaching evidence generally will not meet this test. *Id.* ("[I]t cannot be … impeaching.") Even *Fieldman*, relied upon in the dissenting opinion, acknowledges the essentiality requirement. *Fieldman*, 969 F.3d at 804 (explaining how the excluded testimony was "especially relevant" to a "crucial" part of the petitioner's defense).

Because we are bound by AEDPA deference, we will not overturn the state trial court's reasonable determination that Hinkle's motive theory was speculative, from which it follows that the excluded evidence was not essential to Hinkle's defense. Hinkle had a right to impeach the victim, and he did. The trial court admitted substantial impeachment evidence, including the victim's prior convictions and propensity for lying and manipulation. But Hinkle did not have the right to present evidence supporting any theory of impeachment, no matter how speculative. The Indiana courts applied the state's

evidentiary rules, including relevance, to exclude evidence of the family meeting and did not do so in a manner that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

**3**

Finally, even had the Indiana state courts unreasonably applied federal law, any error was harmless. "For reasons of finality, comity, and federalism, habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.'" *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A state is "not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error." *Id.* at 268 (alterations in original) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam)). So, "relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 267–68 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

We have no such grave doubt. Any error was harmless given that other portions of S.B.'s testimony were corroborated by other witnesses, and the jury had plenty of evidence from which they could assess S.B.'s credibility, including his prior convictions, manipulative behavior, and history of lying to his relatives. The exclusion of S.B.'s drug use or the family meeting—without a factual basis to support Hinkle's theory that S.B. fabricated accusations against Hinkle in an attempt to avoid drug rehabilitation—cannot show actual prejudice.

\*      \*      \*

For these reasons, we AFFIRM the judgment of the district court.

JACKSON-AKIWUMI, *Circuit Judge*, dissenting. James Hinkle's nephew, S.B., accused Hinkle of molestation. S.B.'s allegations were the sole impetus for the charges against Hinkle, and S.B.'s uncorroborated testimony ended up being the only evidence against Hinkle at trial. But the state court barred the jury from hearing one crucial detail about S.B.'s claims: S.B. first accused Hinkle of wrongdoing during a family meeting about S.B.'s own excessive drug use. According to Hinkle, this family meeting gave S.B. a motivation to fabricate the sexual-assault allegations because S.B. wanted to redirect his family's attention and avoid drug rehab or other consequences. Hinkle argues that by barring this evidence, the state courts unreasonably denied him of his right to present a complete defense in contravention of clearly established federal law.

Respectfully, I disagree with the majority opinion that the factors from *Kubsch v. Neal*, 838 F.3d 845 (7th Cir. 2016) (en banc), control our assessment of Hinkle's claim. As our court explained in a more recent decision, the *Kubsch* framework was tailored to assess claims in which a state's hearsay rules excluded critical witness testimony. *Fieldman v. Brannon*, 969 F.3d 792, 807 n.5 (7th Cir. 2020). Thus, *Kubsch* has limited applicability when the evidence at issue was excluded for reasons other than a state's hearsay rules or when the evidence implicates other constitutional rights beyond the complete-defense right. Here, the Indiana courts excluded evidence of S.B.'s motion on relevancy—not hearsay—grounds. And although Hinkle's current counsel frames the case in terms of Hinkle's right to present a complete defense, the crux of Hinkle's claim is that he should have been allowed to present evidence of S.B.'s *motive* for providing false testimony—a quintessential defense ingrained in the Confrontation Clause. Accordingly, we should draw from the Supreme Court's

Confrontation Clause precedent to determine whether Hinkle's right to impeach S.B. with this evidence was clearly established.

I would hold that the exclusion of this evidence was contrary to clearly established federal law confirming a defendant's right to confront his accusers. Hinkle did not, as the majority opinion states, merely wish to present evidence that S.B.'s family held a meeting about his drug use. He wanted to present evidence about the timing of S.B.'s allegations, from which the jury could have inferred a motive for S.B. to falsely accuse Hinkle. Because the right to expose a witness's motivation to lie is at the very core of the Supreme Court's Confrontation Clause precedent, Hinkle should be entitled to habeas relief. On that basis, I respectfully dissent.

## I

I begin with the factual and procedural history of this case. I defer to the state court's version of events (Hinkle has not made any attempt to provide clear and convincing evidence to rebut the state court's findings), and I supplement the state court's recitation of the facts with other undisputed facts that provide background. *See* 28 U.S.C. § 2254(e)(1); *Gilbreath v. Winkleski*, 21 F.4th 965, 968 (7th Cir. 2021).

### A. Background Facts and Trial

During the relevant time, Hinkle's nephew, S.B., lived in Michigan with his mother. *Hinkle v. State*, 97 N.E.3d 654, 659 (Ind. Ct. App. 2018). S.B.'s extended family, including Hinkle, his other uncle Swan, and S.B.'s grandmother, all lived in Indiana. During his early teens, S.B. regularly visited the

Hinkles and his other family in Indiana. The jury found that during at least two of these family visits, Hinkle molested S.B.

As S.B.'s teen years progressed, he became a heavy drug user. By the age of 17, he used marijuana and opiates on a near-daily basis, and he had tried heroin on several occasions. When S.B.'s mother became concerned about changes in S.B.'s behavior, she asked family members to help address the issues while S.B. visited family in Indiana for the summer. S.B.'s mother stayed in Michigan.

In Indiana, S.B.'s grandmother and uncle Swan sat S.B. down for a family meeting about his drug use. Hinkle was absent. S.B.'s family told S.B. that they would need to take steps to address his drug problems, and they revealed that S.B.'s mother was looking into options for drug rehab. In response, S.B. alleged for the first time that Hinkle had molested him years earlier. The topic of the family meeting shifted from S.B.'s drug use to Hinkle's misconduct. The family contacted the police, and the state charged Hinkle with child molesting, sexual misconduct with a minor, and being a repeat sexual offender. *Id.* at 660.

The trial was short. Only three witnesses testified, and the only incriminating evidence came from S.B., who testified about the two occasions when Hinkle molested him. *Id.* S.B.'s grandmother also testified, confirming that S.B. had spent time with the Hinkle family. But she had no direct knowledge of what happened during those visits or Hinkle's actions. Finally, Hinkle's wife testified that although S.B. had visited the Hinkle household, Hinkle was not home at that time.

Hinkle's defense at trial was that S.B. fabricated the allegations. His theory was that, when faced with the possibility

of going to rehab, S.B. launched accusations against Hinkle to deflect attention from himself and avoid negative consequences. Accordingly, during S.B.'s cross-examination, Hinkle sought to introduce evidence about what he characterized as an intervention into S.B.'s drug use and the suspect timing of S.B.'s accusations. As an offer of proof, outside the presence of the jury, Hinkle cross-examined S.B. to demonstrate what impeachment evidence he could elicit.

During this proffer, S.B. contested defense counsel's use of the word "intervention," testifying that:

> Yeah, not quite an intervention. It wasn't like—sit me down, you're going to like rehab, like that. It was more, you know. Like them letting me know that they knew I had had problems, and what are we going to do about it kind of conversation that, the whole—you know, an open conversation about my drug use.

Nonetheless, S.B. conceded that his grandmother told him during this meeting that his uncle Swan would step in to monitor him "very, very closely" while he was in Indiana. He also testified that he learned during the meeting that his mother was looking into rehab options, though he did not know for sure whether his family would actually send him to rehab.

S.B. also described the moment in which he first levied accusations against Hinkle. S.B. said that toward the end of this family meeting, after S.B. learned that his mother was considering rehab options, he asked to call his mother. His grandmother and uncle refused because, as S.B. conceded, he had a

habit of playing family members against each other. S.B. said he insisted that he needed to talk to his mom about "something." But when they still refused him a phone call, S.B. testified, he disclosed his accusations about Hinkle to his uncle.

Despite this proffer, the trial court excluded any testimony about S.B.'s drug use or the circumstances surrounding S.B.'s initial accusation against Hinkle. The court explained that Hinkle was not present during the family meeting, and that it could see "no connection" between the meeting and a motive to fabricate an accusation. The jury thus never heard that S.B. accused Hinkle immediately after S.B. learned that his family may send him to rehab, and only after his family refused to let him call his mother (to discuss the family's plan perhaps).

The court did, however, allow Hinkle to attack S.B.'s credibility with other evidence during cross-examination. Hinkle submitted evidence of S.B.'s prior convictions for theft, and he elicited testimony that S.B. had a "habit of playing family members against each other" and was "really good at lying" to his mother and grandmother. Likewise, the court allowed Hinkle to cross-examine S.B.'s grandmother with questions about whether she told S.B. that his uncle Swan would "be supervising him." But Hinkle was not allowed to elicit any information to elaborate upon this "supervision." And although this evidence may have impugned S.B.'s character or suggested that S.B. was untrustworthy in general, Hinkle remained barred from presenting any evidence that S.B. had a motive to lie about the molestations.

During closing argument, the prosecutor capitalized on Hinkle's inability to present any motive for S.B. to lie. She emphasized how embarrassing the accusations must be for S.B., and how it would have been easier for S.B. to just pretend

nothing happened. Hinkle was unable to rebut this argument with any explanation for S.B.'s motive, and the jury found him guilty. *Hinkle*, 97 N.E.3d at 660. The court sentenced him to 42 years in prison.

### B. State Appeal and District Court Proceedings

Hinkle brought a combined direct appeal and petition for state postconviction relief. Among other claims, he argued that the trial court had violated his constitutional rights when it excluded testimony of S.B.'s motive to lie. As the majority opinion highlights, and as Hinkle's current counsel noted at oral argument, Hinkle primarily couched his arguments on direct appeal in terms of his right to present a complete defense as recognized in *Chambers v. Mississippi*, 410 U.S. 284 (1973). But Hinkle also clarified during his direct appeal that the right to present a defense stems, in part, from the Sixth Amendment's Confrontation Clause. And Hinkle's state appellate briefs relied on cases applying the right to confront witnesses under the Sixth Amendment in addition to cases applying the right to present a complete defense under *Chambers*.

The Indiana Court of Appeals affirmed Hinkle's conviction, explaining that Hinkle did not present any basis to support his assumption that S.B. invented the allegations. It agreed with the prosecution that Hinkle's theory about S.B.'s motives was "factually misplaced" because S.B. "did not know his family was considering consequences for his behavior" and instead testified that the intervention was merely an "open discussion" about his use of drugs. *Hinkle*, 97 N.E.3d at 664.

After the Indiana Supreme Court declined to consider the case, Hinkle filed a pro se petition for federal habeas relief under 28 U.S.C. § 2254. His petition reasserted his claim that the state court violated his right to present a complete defense when it barred evidence of S.B.'s motive. And as with his state appellate filings, Hinkle's federal habeas petition framed his complete-defense arguments in terms of whether the trial court violated his right to confront witnesses under the Sixth Amendment. The district court denied the petition, and Hinkle appealed.

## II

I agree with my colleagues that the state appellate court adjudicated Hinkle's federal claim on the merits, and therefore we may grant relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). But unlike the majority opinion, I conclude that Hinkle's claim succeeds even under this formidable standard. To explain why, I start with a brief discussion of the contours of the constitutional right at issue. Because § 2254(d) requires this court to identify clearly established law "as determined by the Supreme Court of the United States," I focus on Supreme Court precedent while relying on circuit law to determine how that precedent applies to habeas petitions from state prisoners.

### A. *Chambers v. Mississippi* **and the Right to Present a Complete Defense**

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful

opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). This right is typically implicated when some state-specific evidentiary rule leaves out reliable evidence that is otherwise relevant to an accused's defense. The right is abridged if the state's rules "infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 324 (cleaned). But it does not prohibit trial judges from applying well-established rules to exclude evidence for which the "probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 326.

The seminal Supreme Court case is *Chambers v. Mississippi*, 410 U.S. 284 (1973). It involved a police officer who was shot and killed during an altercation with a crowd of about 50 or 60 people. *Id.* at 285–86. Most witnesses could not identify the shooter, but one sheriff's deputy testified that he saw the defendant fire the shot. *Id.* at 286. Another person in the crowd, however, confessed to a friend that he was the one who had shot the officer. *Id.* at 287. The defendant called this alternate suspect as a witness. But the witness recanted, and the trial court would not allow the defendant to impeach the witness with evidence of his prior confession because doing so would violate Mississippi's hearsay rule and a rule against the impeachment of one's own witnesses. *Id.* at 291–93.

The Supreme Court held that the evidentiary rulings deprived the defendant of his due process right to present a defense. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Id.* at 302. The Court noted that the prior confession—a spontaneous, self-incriminating statement corroborated by other evidence—was

similar to other traditional exceptions to hearsay rules. *Id.* at 300–01. And when evidence otherwise bears "persuasive assurances of trustworthiness," "the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* at 302.

## B. Seventh Circuit Cases Applying the Complete-Defense Right to Habeas Claims

In *Kubsch v. Neal*, 838 F.3d 845 (7th Cir. 2016), an en banc panel of our court considered the availability of habeas relief for a *Chambers* claim. Like *Chambers*, the claim in *Kubsch* involved a state court's exclusion of exculpatory hearsay evidence in a murder case: a videotaped police interview of a nine-year-old girl who saw the murder victims after the defendant allegedly killed them. *Id.* at 852–53. In holding that the state court's exclusion of the evidence was an unreasonable application of clearly established federal law, this court reviewed in detail the Supreme Court's *Chambers* line of cases. *Id.* 856–58. From these cases, the *Kubsch* panel identified five common factors that had entitled the defendants to relief, *id.* at 858, and which my colleagues also rely on in the majority opinion here. Ante at 12–13. The *Kubsch* panel further explained that (at least when *Chambers* is viewed through the lens of federal habeas review) a state evidentiary rule must fall against a complete-defense argument only when all five factors are present. *Kubsch*, 838 F.3d. at 862.

More recently, however, this court voiced skepticism about whether the *Kubsch* factors should apply in complete-defense cases when the excluded evidence implicates *other* constitutional rights and was excluded for reasons *other than* a state's hearsay rules. In *Fieldman v. Brannon*, 969 F.3d 792 (7th Cir. 2020), this court granted habeas relief after an Illinois

court improperly barred a defendant from testifying about an associate's violent criminal history. The defendant was convicted of solicitation for murder for hire, and the defense's theory had been that the defendant met with the hitman (an undercover officer) only because he was afraid of the associate who arranged the meeting. *Id.* at 795–98. Like Hinkle, the petitioner in *Fieldman* framed his claim in terms of the right to present a complete defense. *Id.* at 799. But this court explained that the *Kubsch* framework did not apply because *Kubsch* "applied principles distilled from *Chambers* and related cases to a state's application of its hearsay rule to exclude critical testimony." *Id.* at 807 n.5. Neither *Chambers* nor *Kubsch* relied on a defendant's right to testify in his own defense, which this court considered to be the underlying source for the complete-defense in *Fieldman*. *Id.*

Accordingly, in assessing the defendant's claim that he had been deprived of his right to present a complete defense, the *Fieldman* court focused on whether the state judgment was "contrary to clearly established federal law confirming a defendant's right to testify." *Id.* at 795; *see also id.* at 802. The court explained that *Kubsch* still provided some helpful guidance on when a state's evidentiary rule should yield to a defendant's right to present a defense. *Id.* at 807 n.5. But the *Kubsch* factors did not cabin the analysis of the petitioner's complete-defense claim. When faced with a habeas claim related to a state defendant's right to present a defense, the relevant question was how the Supreme Court had defined the contours of the defendant's right to present the evidence at issue.

*Fieldman*'s limitation on the *Kubsch* framework is relevant because, like the defendant in *Fieldman*, Hinkle is not making

a *Kubsch*-style challenge to Indiana's hearsay rules. The Indiana courts excluded evidence of the family meeting about S.B.'s drug use on relevancy grounds. Hinkle argues he should have been allowed to confront S.B. with this evidence because it was relevant to S.B.'s motive to lie—which is a quintessential right protected under the Confrontation Clause. Just as *Fieldman* looked to Supreme Court precedent on a defendant's right to testify, Hinkle's claim calls upon us to look to Supreme Court precedent on a defendant's right to confront witnesses.

### C. The Supreme Court's Confrontation Clause Precedent

Among the evidence that a defendant is entitled to present as part of a complete defense is impeachment evidence showing an accusing witness's motivation to lie. Under the Confrontation Clause, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974). The Confrontation Clause is violated when a criminal defendant is "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias" by presenting facts from which jurors could "appropriately draw inferences relating to the reliability of the witness." *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)).

The scope of a defendant's right to present evidence under the Confrontation Clause is slightly different than the *Chambers* right to present certain hearsay evidence as described in *Kubsch*. One pertinent difference is that the Supreme Court has granted Confrontation Clause relief even in cases that did

not involve murder or the death penalty. *Compare Davis*, 415 U.S. 308 (relief for defendant convicted of nonviolent burglary) *with Kubsch*, 838 F.3d at 858 (noting that the Supreme Court has applied *Chambers* only in murder cases). Moreover, whereas *Kubsch* holds that the *Chambers* rule does not clearly apply to impeachment evidence, the same is not true of the Confrontation Clause: Exposure of a witness's motivation is a "proper and important function" of the right to cross examination. *Van Arsdall*, 475 U.S. at 678-79. And courts must allow defendants to elicit evidence that would allow a reasonable jury to find that a witness was motivated to provide favorable testimony for the prosecution. *See id.* at 676 (trial court violated Confrontation Clause by prohibiting "*all* inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge" even when witness denied any deal with the state).

## III

### D. No Waiver of Confrontation Clause

The majority opinion suggests that Hinkle waived any reliance on the Confrontation Clause, or at least failed to exhaust such a claim in state courts, by presenting his claim both here and in state court only in terms of whether his right to present a complete defense was violated. Ante at 5, 16. I agree with my colleagues that Hinkle could have done a better job presenting the current appeal; his brief in this court fails to cite any Confrontation Clause precedent and instead focuses on whether he is entitled to relief under *Kubsch* and *Chambers.* But for several reasons I do not see any issue of waiver or a failure to exhaust under 28 U.S.C. § 2254(b)(1)(A).

First, Hinkle presented a Confrontation Clause argument both in state court and in his pro se habeas petition filed in the district court. His presentation was not perfect. As Hinkle conceded at oral argument, state appellate counsel *mostly* framed Hinkle's claims on direct appeal as a violation of the right to present a complete defense rather than a violation of the Confrontation Clause. But Hinkle's briefs on direct appeal still asserted a violation of his confrontation rights under the Sixth Amendment and analogized the facts of his case to the Supreme Court's application of the Confrontation Clause in *Davis v. Alaska*, 415 U.S. 308. *See* R. 11-1 at 33; R. 11-3 at 6–7. Hinkle's pro se habeas filings in the district court were similar: He primarily asserted a complete-defense claim, but he fleshed out that claim by citing Confrontation Clause precedent and arguing that the state court violated his right to confront S.B. *See* R. 9 at 3 (asserting habeas claim for "blocking right to confront"). Contrary to the majority opinion's assessment, Hinkle did not relegate the Confrontation Clause to mere references in the underlying pleading; he also cited the Sixth Amendment and Confrontation Clause authority in his habeas briefing. R. 14 at 20 (arguing that he had a right to present a complete defense including confrontation evidence under *Davis v. Alaska*, 415 U.S. 308). In other words, every step of the way before reaching this court, Hinkle argued that his right to present a defense was violated *because* he had a right under the Confrontation Clause to present evidence of S.B.'s motivations.

Second, the substance of Hinkle's arguments hinges upon the Confrontation Clause. As the district court noted, "[t]he dividing line between the right to confrontation and the right to present a complete defense isn't always unambiguous." And the gravamen of Hinkle's argument to this court is that

he should have been allowed to confront S.B. with evidence of S.B.'s motive to lie. That is arguably *the* quintessential right protected by the Confrontation Clause. Moreover, although Hinkle's briefing before this court focuses on the right to a complete defense, he still explains that the right to a complete defense stems in part from the Compulsory Process and Confrontation Clauses of the Sixth Amendment, and that it protects "the right to confront and to cross-examine." *See* Appellant's Br. at 14 (citations omitted). Again, Hinkle could have done a better job highlighting the Supreme Court's Confrontation Clause precedent in his briefing before this court. But nothing in his filings or statements at oral argument evince an "intentional relinquishment" of the Confrontation Clause arguments he made in the district court. *Bourgeois v. Watson*, 977 F.3d 620, 629 (7th Cir. 2020).

Third, our court has previously explained that the *Kubsch* framework primarily applies to the exclusion of hearsay evidence. *Fieldman*, 969 F.3d at 807 n.5. But when a petitioner's complete-defense claim challenges the exclusion of evidence that invokes another constitutional right, our court looks at Supreme Court precedent establishing the right to present that type of evidence. *See id.* at 802 (analyzing complete-defense claim by assessing whether excluded evidence fell within defendant's clearly established right to testify in his own defense). Because Hinkle challenges an order barring him from confronting a witness with evidence of the witness's motive, analysis of his complete-defense claim requires consideration of the Supreme Court cases discussing that type of evidence—*i.e.*, cases applying the Confrontation Clause.

Fourth and most importantly, the state injected precedent applying the Confrontation Clause into this appeal. Rather

than argue to this court that Hinkle waived or forfeited any Confrontation Clause claim, the state identified Confrontation Clause cases and briefed the scope of the Sixth Amendment's confrontation protections. *See* Appellee's Br. at 16–17 (discussing, among other cases, *Van Arsdall*, 475 U.S. 673 and *United States v. Trent*, 863 F.3d 699 (7th Cir. 2017)). For example, the state cites *United States v. Trent*, 863 F.3d 699, a case about the scope of a defendant's right to present motive evidence under the Confrontation Clause, as relevant to determining which evidence falls within the right to present a complete defense. So to the extent that Hinkle has waived any reliance on the Confrontation Clause by failing to adequately brief the issue before this court (which, again, I do not believe he has), the state has "waived waiver." *Gilbreath v. Winkleski*, 21 F.4th 965, 982 n.15 (7th Cir. 2021).

Accordingly, I would focus on the Supreme Court's precedent interpreting the Confrontation Clause to determine the scope of Hinkle's right to present impeachment evidence, and to determine whether the exclusion of evidence of S.B.'s motive was contrary to clearly established federal law.

### E.  The State Court Decision is an Unreasonable Application of Supreme Court Precedent

Hinkle argues that he is entitled to relief under § 2254(d) because the state appellate court's judgment is an unreasonable application of federal law. Under § 2254(d)'s "unreasonable application" clause, Hinkle must demonstrate that the state court applied Supreme Court precedent in an objectively unreasonable manner, and that there was "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When determining whether a federal rule has been clearly established, the Supreme Court has warned against framing the theory at a "high level of generality." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013). The right question is "whether decisions of the Supreme Court establish that the particular decision the state judiciary reached is forbidden." *Keith v. Schaub*, 772 F.3d 451, 454 (7th Cir. 2014). But although the Supreme Court precedent must be on point, the Court has "never insisted on virtual identity between its precedent and the state court's decision." *Fieldman*, 969 F.3d at 802 (citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007)).

For decades, the Supreme Court has made clear that defendants must be allowed to present evidence of an accuser's motive for testifying against them. *See, e.g., Olden*, 488 U.S. at 231; *Van Arsdall*, 475 U.S. at 678–79; *Davis*, 415 U.S. at 316–17. Indeed, this case is remarkably like *Davis*, in which the Court granted relief for a defendant convicted of burglarizing a safe from a closed tavern. A teenager who lived near where state troopers discovered the safe testified that he had seen two men, including the defendant, in the area. 415 U.S. at 310. Relying on state evidentiary rules, the trial court barred the defense from impeaching the witness with evidence that the witness was on probation for a juvenile adjudication of burglary, and thus had a motive to implicate the defendant as to shift suspicion away from himself. *Id.* at 310–11. The Court held that the application of the state rule violated the defendant's right to confrontation, which outweighed the state's interest in protecting the anonymity of juvenile offenders. *Id.* at 319.

As in *Davis*, Hinkle wanted to impeach the state's star witness with evidence that the witness had a motive to deflect attention from himself. In both cases, the impeachment

evidence was potentially embarrassing for the witness, had a slight potential to prejudice jurors against the witness, and was a type of evidence that a state court would typically have good reason to exclude. (For *Davis*, evidence of a juvenile adjudication. Here, evidence revealing the witness's heavy drug addiction.) And although the record here lacks evidence of animus or any reason why S.B. would have wanted to retaliate against Hinkle in particular, the same was true in *Davis*. But in both cases the timing of the events, and the witness's desire to shed attention from himself, suggested that he had an additional motive to accuse *someone* else of wrongdoing even if not the defendant in particular.

Significantly, a defendant has a right to present evidence of motive even when the evidence would not conclusively establish the defendant's innocence if credited. For example, a defendant has a right to impeach a witness with evidence that the witness received a benefit from the state, even though that benefit does not necessarily prove that a deal was struck or render the testimony untruthful. *Van Arsdall*, 475 U.S. at 679. What matters is that the jury has the opportunity to learn of the accuser's biases and appropriately weigh the evidence.

The underlying principles of the five *Kubsch* factors also generally support the admission of evidence of S.B.'s motive. *See Fieldman*, 969 F.3d at 807 n.5 (noting that even when the *Kubsch* framework does not apply, "*Kubsch* contains a helpful, general discussion of circumstances in which a state evidentiary rule should yield to a defendant's right to present a defense"). First, the excluded testimony was not part of an affirmative defense but rather a direct attack on the state's only evidence at trial. *Kubsch*, 838 F.3d at 858. If a jury had concluded that S.B. was not credible, it would have acquitted

Hinkle. Second, although Hinkle was not accused of murder, *see id.*, he was convicted of a type of offense that has shown up in the Supreme Court's Confrontation Clause cases. *E.g., Olden*, 488 U.S. at 228 (vacating rape conviction when defendant barred from presenting evidence of witness's motive to lie); *Coy v. Iowa*, 487 U.S. 1012, 1014 (1988) (vacating convictions for "lascivious acts with a child"). Third, because Hinkle's defense was premised on convincing the jury that S.B. fabricated the accusations, the excluded testimony was essential to his defense as the only evidence that would have explained why S.B. had a motive to lie. *See Kubsch*, 838 F.3d at 858. I disagree with my colleagues that Hinkle's theory was misleading or lacked a factual basis because S.B. denied that the family meeting was serious enough to be considered an "intervention": S.B. himself testified that he learned for the first time during this meeting that his family was going to be monitoring him "very, very closely" and that his mother was looking into rehab options for him. Fourth, the evidence was reliable because Hinkle wanted to rely on S.B.'s own testimony to impeach S.B. *See id.* So rather than submit extrinsic impeachment evidence that needed to be separately tested for reliability and trustworthiness, he relied on S.B.'s foundational knowledge of the events. Fifth, a lack of parity between the defendant and the government suggests that the state court exercised its evidentiary rules in an arbitrary manner. *See id.* After the trial court ruled that evidence of S.B.'s motive to lie was irrelevant, it allowed the state to emphasize during closing arguments that S.B. had no motive to fabricate his allegations. As Hinkle points out, the state was thus able to use the trial court's ruling as both shield and sword by claiming that evidence was irrelevant and then using the missing evidence to attack Hinkle.

I am not convinced by the state's arguments that the excluded evidence was only "marginally relevant," and that the state court reasonably concluded that nothing but speculation linked the family meeting about S.B.'s drug use to S.B.'s accusations against Hinkle. Unlike the other impeachment evidence submitted at trial, the excluded evidence went specifically to S.B.'s motive.

Hinkle would have shown how S.B. first accused him of molestation during a family meeting years after S.B. said the molestations took place. The jury would have heard how S.B. learned for the first time during this meeting that his mother was looking into rehab options for him. The jury also would have heard how, after learning this information, S.B. immediately asked to call his mother. Only when S.B.'s other family members denied him access to a phone did S.B. disclose Hinkle's actions to those present. A jury could infer from this sequence of events that S.B. wanted to deflect attention away from himself because he thought he would be punished for his drug use, possibly even sent away to rehab. *See, e.g., Davis*, 415 U.S. at 319; *cf. also Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017) (in employment context, noting that suspicious timing may be relevant to a party's intent). Contrary to the state's assertion that Hinkle merely wanted to "smear S.B. as a drug user," the *timing* of S.B.'s accusations was the relevant evidence of a motive—not the drug use. For this reason, I also disagree with the majority opinion's conclusion that evidence of this meeting was not essential to Hinkle's defense. The timing and context of S.B.'s initial accusation was essential, even if broad references to S.B.'s general drug habits would not have been.

The state's position would be stronger if the trial court had admitted the evidence of the family meeting but excluded Hinkle's *other* impeachment evidence about S.B.'s prior convictions, propensity for lying, etc. So long as the defense is given a reasonable opportunity to question witnesses about their motives, the trial court is awarded leeway to exclude additional impeachment evidence based on concerns about harassment, prejudice, or other things. *Van Arsdall*, 475 U.S. at 679. But here, the trial court arguably got it backwards—it allowed Hinkle to thoroughly smear S.B. as a reprobate and liar but did not let Hinkle explain *why* S.B. would have a motive to lie in the first place.

To be sure, the state is correct that a defendant's right to confrontation does not permit a defendant to question witnesses "in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Courts have wide latitude to impose reasonable limits to exclude things that are prejudicial, confusing, harassing, or only marginally relevant—so long as the defendant has had a chance to impeach the witness's credibility and establish a motive to lie. *See United States v. Clark*, 657 F.3d 578, 584 (7th Cir. 2011) (collecting cases); *see also Trent*, 863 F.3d at 704 (no right to impeach cooperating witnesses with exact mandatory minimum of witnesses' dismissed charges, when defense had already established that the sentences would have been substantial).

But the key is that a defendant must have had the opportunity to at least probe the witness's bias and motives. Indeed, every Confrontation Clause case the state cites makes that caveat. Because the family meeting and the timing of S.B.'s accusations were the *only* available evidence of S.B.'s possible

motive to fabricate a claim, no fairminded jurist could conclude that the evidence should have been excluded.

Nor can I agree with my colleagues that the exclusion of the evidence was harmless. Although the majority opinion notes that "other portions" of S.B.'s testimony were corroborated, ante at 21, S.B.'s testimony was the only evidence that the crime took place. Other witnesses could corroborate that Hinkle—a family member—at times had access to S.B. But outside S.B.'s testimony, no additional testimonial or physical evidence was presented to show that S.B. had been molested. I also cannot conclude that other impeachment evidence was sufficient to avoid any harm, particularly given the lack of any other evidence of S.B.'s motives in the record and the state's closing arguments taking advantage of that void in Hinkle's case.

### IV

For the above reasons, I respectfully dissent.